IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHNNY BRYANT GAFFORD,
     Petitioner,

v.                               Case No.  3:11cv227/LC/CJK

MICHAEL D. CREWS,[1]
     Respondent.

_____

**ORDER and
REPORT AND RECOMMENDATION**

Before the Court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 8). Respondent filed an answer (doc. 21), submitting relevant portions of the state court record (*see* docs. 22, 23). Petitioner replied. (Doc. 25). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the Court

---

[1]Michael D. Crews succeeded Edwin G. Buss and Kenneth S. Tucker as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent. Fed.R.Civ.P. 25(d).

show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On October 25, 2005, petitioner was indicted for First Degree Premeditated or Felony Murder with a Weapon (Count 1), Attempted First Degree Premeditated Murder with a Weapon (Count 2) and Attempted First Degree Felony Murder with a Weapon (Count 3), in the Circuit Court for Okaloosa County, Florida. (Doc. 23, Ex. A, pp. 169-70).[2] After a jury trial, petitioner was acquitted of the murder charge (Count 1) and the second instance of attempted murder (Count 3), but convicted of Attempted First Degree Premeditated Murder with a Weapon (Count 2). (Ex. D, pp. 657-59). Petitioner was adjudicated guilty of Count 2 and sentenced to natural life in prison. (*Id*., pp. 729-34). Petitioner's judgment of conviction was summarily affirmed on direct appeal, on May 30, 2008. *Gafford v. State*, 982 So. 2d 1181 (Fla. 1st DCA 2008) (Table) (copy at Ex. S).

On December 5, 2008, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. U). The motion was dismissed on September 8, 2009, pursuant to petitioner's voluntary dismissal. (*Id*.).

On October 7, 2009, petitioner filed a new Rule 3.850 motion. (Ex. V, pp. 1-26). The motion was denied without an evidentiary hearing. (Ex. W, pp. 152-213). The Florida First District Court of Appeal ("First DCA") summarily affirmed. *Gafford v. State*, 57 So. 3d 849 (Fla. 1st DCA 2010) (Table) (copy at Ex. Z). The mandate issued April 19, 2011. (Ex. PD-3).

While petitioner's postconviction proceeding was pending, petitioner filed a

---

[2]All references to exhibits will be to those provided at Doc. 23, unless otherwise noted.

state habeas petition alleging ineffective assistance of appellate counsel. (Ex. CC). The First DCA denied the petition on the merits on February 15, 2010. *Gafford v. State*, 28 So. 3d 940 (Fla. 1st DCA 2010) (copy at Ex. DD).

Petitioner filed his original federal habeas petition in this Court on May 6, 2011. (Doc. 1, p. 1). Petitioner's amended petition, filed on June 22, 2011, presents five grounds for relief. (Doc. 8). Respondent argues that petitioner is not entitled to federal habeas relief because petitioner's claims are procedurally defaulted or without merit. (Doc. 21).

## LEGAL STANDARDS

### Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review

in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The

appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas

petition upon which there has been an adjudication on the merits in a state court

proceeding, the federal court must first ascertain the "clearly established Federal

law," namely, "the governing legal principle or principles set forth by the Supreme

Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538

U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly

established" only when a Supreme Court holding at the time of the state court

decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 130 S.

Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608

F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court

case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

A state court, however, may "decline to apply a specific legal rule that has not been

squarely established by [the Supreme Court]" without running afoul of the

"unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129

S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's

decision, the "unreasonable application" standard focuses on the state court's ultimate

conclusion, not the reasoning that led to it.  *See Gill v. Mecusker*,  633 F.3d 1272,

1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786,

178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or

theories supported or could have supported the state court's decision, and then ask

whether it is possible that fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior Supreme Court decision. *See

Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal

district court may rely on grounds other than those articulated by the state court in

determining that habeas relief was not warranted, so long as the district court did not

err in concluding that the state court's rejection of the petitioner's claims was neither

an unreasonable application of a Supreme Court holding nor an unreasonable

determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus

from a federal court, a state prisoner must show that the state court's ruling on the

claim . . . was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

*Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the

merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record

reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[4] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364,

---

[4]Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

　　(A)  the applicant has exhausted the remedies available in the courts of the State; or

　　(B) (i)  there is an absence of available State corrective process; or

　　　(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

DISCUSSION

Ground One        "Whether Mr. Gafford was denied effective assistance of counsel for counsel's failure to adequately argue grounds for judgement [sic] of acquittal due to actual innocence."  (Doc. 1, p. 4 and continuation pages 1-13).

Count 2 of the indictment charged petitioner with attempting to kill, with premeditated design, Joel Zetterlund by cutting or stabbing him with a knife or blade. (Ex. A, p. 170).  At the close of the State's case, defense counsel moved for a judgment of acquittal ("JOA").  Counsel argued with regard to Count 2:

We also feel that the state has not proved a prima facie case as to count two.  They have failed to prove a prima facie case saying that Mr. Gafford formed a premeditated design to effect the death of Joel Zetterlund and did attempt to kill and murder Joel Zetterlund by cutting or stabbing him with a knife or blade.

(Ex. J, p. 991).  At the close of all the evidence, defense counsel renewed his motion for JOA, arguing:  "With regard to count two, attempted murder, the state has not made a prima facie case with regard to the elements and that the facts support otherwise."  (Ex. K, p. 1183).

Petitioner asserts that trial counsel rendered ineffective assistance by arguing a "boilerplate" motion for judgment of acquittal that "failed to state with specificity, the shortcomings of the State's case . . ., where the evidence presented failed to prove

that Mr. Gafford's assault on Zetterlund was of a 'premeditated' design, when the evidence affirmatively supports a self defense theory." (Doc. 8, continuation page 13). Petitioner asserts that he presented this claim to the state courts in his Rule 3.850 motion.

Respondent contends this claim is procedurally defaulted, because petitioner never presented it to the state courts. (Doc. 21, pp. 4-7). Respondent acknowledges that petitioner's postconviction motion raised an ineffective assistance claim that counsel failed to adequately argue the motion for JOA. Respondent maintains, however, that petitioner's claim in state court did not present the specific legal and factual foundation petitioner now presents in his federal habeas petition. Petitioner asserted in state court that counsel should have argued the evidence was insufficient to convict petitioner of any offense greater than attempted voluntary manslaughter because the State's evidence of intent was purely circumstantial and failed to exclude petitioner's hypothesis that he cut Zetterlund because he subjectively but perhaps unreasonably believed himself under immediate threat of serious bodily harm. In contrast, petitioner asserts here that counsel should have argued the evidence affirmatively supported a self-defense theory, which implies that counsel should have sought acquittal on the greatest and all lesser offenses including attempted voluntary manslaughter. (Doc. 21, pp. 4-7). Respondent argues that the two positions are not the same:

> Before the postconviction court, Gafford's ineffectiveness claim went only to the heightened mental states (premeditation or depraved mind) necessary to prove attempted first or second degree murder, respectively; while conceding a legally sufficient case of attempted manslaughter. Before this court, he claims counsel was ineffective for not seeking complete JOA based on self defense.

The rule 3.850 motion expressly conceded a legally sufficient case of attempted manslaughter. To the extent [petitioner's federal habeas claim] implies defense counsel ineffectively failed to argue against a prima facie case of attempted manslaughter, Gafford's first ground is not exhausted.

(*Id*. pp. 6-7). Respondent maintains that even if petitioner is found to have properly exhausted this claim, he is not entitled to federal habeas relief because the state court's rejection of the claim is consistent with *Strickland*.

A.    Exhaustion and Procedural Default

"'[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously.'" *Ogle v. Johnson*, 488 F.3d 1364, 1369 (11th Cir. 2007) (*quoting Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992)). Petitioner must present the state court with the instance of ineffective assistance he now asserts "such that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation." *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal quotation marks omitted). "[A] general allegation of ineffective assistance or a specific allegation of ineffective assistance [made in state court] wholly unrelated to the ground on which the claim ultimately depends [in federal court] will [not] immunize a petitioner from a finding of procedural default." *Ogle*, 488 F.3d at 1369.

Respondent accurately characterizes petitioner's presentation of his ineffectiveness claims in state court and here. (*Compare* Doc. 23, Ex. V, p. 2, *with* Doc. 8, continuation pages 1 and 13). The first ground of petitioner's Rule 3.850 motion complained that counsel's JOA argument was deficient, because counsel failed to argue that the State's evidence of intent was insufficient to prove premeditation or depraved mind (sufficient to prove attempted first-degree or second-

degree murder) because the State's case was purely circumstantial and failed to exclude petitioner's hypothesis that he cut Mr. Zetterlund because he subjectively but unreasonably believed himself under immediate threat of serious bodily harm. Petitioner admitted that "[u]nder a reasonable view of the State's evidence, Defendant overreacted and used excessive force in a situation that appeared threatening but actually might not have been." (Ex. V, p. 4). Petitioner summarized the argument counsel should have made as follows:

> The State failed to prove Defendant intended to kill or that he acted with malice or evil intent. At worst, he overreacted to a charged situation thrust upon him by Zetterlund and Ciastko. Therefore, the evidence in this case, when viewed in the light most favorable to the State, does not support a finding of guilt to attempted first-degree murder without the improper stacking of inference upon inference, and is entirely consistent with voluntary manslaughter.

(*Id.*, p. 5). That is not the same claim petitioner now advances – that counsel was deficient for failing to argue that the State's evidence was insufficient to convict of first-degree murder and all lesser-included offenses, because the State failed to rebut petitioner's evidence of self-defense. The Rule 3.850 court addressed petitioner's claim as follows:

> In his first claim, the Defendant argues that his trial attorney failed to adequately argue for a judgment of acquittal on the charge of attempted first degree murder. According to the motion, the Defendant only attacked the victim because he believed Mr. Zetterlund posed a serious physical threat to his safety. The Defendant's actions, he submits, were justified and did not rise to the level of first degree attempted premeditated murder.
>
> The elements of the crime of attempted first degree murder are: (1) an act intending to cause death that went beyond just thinking or talking about it; (2) a premeditated design to kill; and (3) the

commission of an act which would have resulted in the death of the victim except that someone prevented the defendant from killing the victim or the defendant failed to do so.

The Defendant does not suggest that the act of plunging a knife into the neck of the victim was not an act which was intended to cause death. He does, however maintain that he lacked the premeditated design to kill and that he only acted, perhaps unreasonably, in self-defense. When the facts are viewed in a light most favorable to the State, the court finds that the Defendant's claim that his attorney erred in not moving for a judgment of acquittal must fail and that the case was properly submitted to the jury for consideration.

A defendant is entitled to use deadly force against another only if he or she reasonably believes such force is necessary to prevent imminent death or great bodily harm. The defense of property, or property of another, is not a sufficient legal basis to use deadly force. The evidence submitted at trial by the State showed that the Defendant attacked Mr. Zetterlund at a time when he presented no threat to the Defendant or anyone else. The Defendant also revealed his intentions when he warned the men earlier that he would kill them if they did not leave. Furthermore, the Defendant's claim that he may have "unreasonably perceived" the victim as being a threat is not a defense that is recognized in Florida. Since the judgment of acquittal would not have been granted had it been raised, the Defendant's trial counsel cannot be held ineffective for not moving for a judgment of acquittal.

(Ex. W, pp. 2-3) (footnotes omitted). The Rule 3.850 court noted in a footnote that the claim of "imperfect self defense" is not available in Florida. (*Id*., p. 3 n.3). The court also noted in a footnote: "Although counsel moved for a judgment of acquittal, he did not specify the basis for the motion and the issue does not appear to have been preserved for appellate review." (*Id*., p. 3 n.4). The Rule 3.850 court did not address the likelihood that a motion for JOA would have succeeded had counsel argued that the State failed to present evidence establishing beyond a reasonable doubt that

petitioner did not act in self-defense.  To the extent petitioner's present claim deviates from the ineffective assistance claim petitioner presented to the state court, the claim is procedurally defaulted and this Court will not review it.  To the extent petitioner's seeks federal habeas review of the claim he presented to the state court, the following analysis applies.

      B.     Merits

          i.     Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) the Supreme Court set out a two-part inquiry for ineffective assistance claims. A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  466 U.S. at 687, 104 S. Ct. 2052.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S. Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131

S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

  ii.  Federal Review of State Court Decision

The state court's written order properly identifies *Strickland* as the controlling legal standard. (Ex. W, p. 153). As petitioner challenges only the state court's application of the two-part *Strickland* test in its resolution of his motion for postconviction relief, the analysis of petitioner's claim is confined to whether the state court's application of *Strickland* was objectively unreasonable. *See Williams*, 120 S. Ct. at 1521 (interpreting 28 U.S.C. § 2254(d)(1)).

The state court determined, reasonably, that a motion for JOA on petitioner's proffered basis would not have succeeded, because the State presented legally sufficient evidence (direct evidence) from which the jurors could reasonably conclude petitioner attempted to murder Zetterlund with premeditation, Fla. Stat. §§ 782.04 and 775.087. Viewing the evidence in the light most favorable to the State, the State showed through Mr. Zetterlund's testimony that petitioner used deadly force at a time when Zetterlund presented no threat to petitioner or anyone else. (Ex. W, p. 154 (*citing* Ex. G, pp. 347-651)). Mr. Zetterlund testified that the first hostile encounter between himself and petitioner ended when he left petitioner's property. Zetterlund

had gone to petitioner's home after he saw Barbara's (Zetterlund's girlfriend) van parked there. Zetterlund walked to the doorway of petitioner's home, spoke to Barbara, and after she indicated she was not going home with Zetterlund, walked away from the house. (Ex. G, pp. 345-46). When Zetterlund got outside the fence enclosing petitioner's yard, he turned and asked Barbara if she was sure about her decision. Barbara again indicated she was not going home with Zetterlund. (*Id*., p. 346). At that point, petitioner showed Zetterlund a knife and said he would kill Zetterlund if he did not leave. (*Id*., pp. 346-47). Zetterlund left.

Some time later, Zetterlund walked back to petitioner's property. Zetterlund was not armed. Zetterlund yelled from near Barbara's van into petitioner's yard. The van was parked outside the fence enclosing petitioner's yard. (*Id*., p. 350). Barbara did not respond. (*Id*., pp. 349-51). Zetterlund went to the back door of Barbara's van to get tools he mistakenly thought were still there. Zetterlund saw his cousin Joey Ciastko walk up from behind. (*Id.*, p. 351). Zetterlund saw a small knife lying in the van by the back door and picked it up. Zetterlund was angry and began puncturing the van's tires with the knife. (*Id*., pp. 351-56). After puncturing the tires, Zetterlund stood upright. Zetterlund saw Ciastko struggling with petitioner at the fence, about ten feet from the van. Petitioner had his hands across the fence. Ciastko was outside the fence and trying to fend petitioner off. The next thing, Ciastko turned around. Ciastko was holding his chest and looked badly hurt. (*Id*., pp. 356-58, 361).

Zetterlund never saw Ciastko with a knife. (*Id*., p. 399). Zetterlund yelled to Ciastko, "let's get the hell out of here." (*Id*., p. 358). As soon as Zetterlund said that, he got his "neck sliced." (*Id*., p. 359). It happened so quickly Zetterlund did not see it coming, but felt the blood. When Zetterlund had last seen petitioner, petitioner was

standing on the "other side" of the fence from where Zetterlund was. (*Id.*, pp. 358-61). Zetterlund saw no one else in the yard. (*Id.*, p. 364).

As the Rule 3.850 court reasonably concluded, a jury could reasonably infer from petitioner's threat to kill Zetterlund made earlier in the day, that petitioner was disposed to murder and had formed the intent to kill Zetterlund should he return. A jury could also reasonably infer that once petitioner fatally stabbed Ciastko, petitioner was no longer threatened by anyone and that petitioner attempted to murder Zetterlund with premeditation and evil intent when he walked around the fence to the van and stabbed Zetterlund in the neck. As there was sufficient evidence of intent to survive a motion for JOA and to support petitioner's conviction for attempted first degree premeditated murder, petitioner cannot establish deficient performance or prejudice for counsel's failure to advance petitioner's proposed argument. *Freeman v. Attorney Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim[.]").

Petitioner argues that the Rule 3.850 court's decision was unreasonable because Mr. Zetterlund's testimony was unreliable and, in petitioner's view, the reliable evidence shows that petitioner "was attacked by two drug/alcohol crazed hoodlums." (Doc. 8, continuation page 12). Whether Mr. Zetterlund's testimony was reliable was an issue for the jury to decide, not the trial court on a motion for judgment of acquittal. *Fitzpatrick v. State*, 900 So. 2d 495, 508 (Fla. 2005) (holding that the existence of contradictory, conflicting testimony or evidence "does not warrant a judgment of acquittal because the weight of the evidence and the witnesses' credibility are questions solely for the jury."); *Williams v. State*, 967 So. 2d 735, 755 (Fla. 2007) (holding that the trial court should not grant a motion for judgment of

acquittal, unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law".) Further, the trial court is required, in ruling on a motion for judgment of acquittal, to view the evidence and every reasonable inference from it in favor of the State. *Jones v. State*, 790 So. 2d 1194, 1197 (Fla. 1st DCA 2001); *State v. Williams*, 742 So. 2d 509, 511 (Fla. 1st DCA 1999) ("A defendant, in moving for a judgment of acquittal, admits . . . every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.") (internal quotation omitted). The state court was not unreasonable in relying on Zetterlund's testimony to determine that there was sufficient evidence of premeditation to survive a motion for JOA.

The state court also concluded, reasonably, that petitioner could not show his counsel was ineffective for failing to argue that petitioner cut Zetterlund's neck because he believed unreasonably that he was under immediate threat of serious bodily harm, as that theory was not a viable defense under Florida law. (Ex. W, p. 154) (*citing Hill v. State*, 979 So. 2d 1134, 1135 (Fla. 3d DCA 2008)). This Court will not second guess the state court's determination that petitioner's proposed theory was not viable under state law. *See, e.g., Herring v. Sec'y, Dep't of Corr.,* 397 F.3d 1338 (11th Cir. 2005); *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005). Because petitioner's proposed argument for acquittal would not have succeeded, trial counsel was not ineffective for failing to raise it in his motion for JOA.

The state court's rejection of petitioner's ineffective assistance claim was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground One.

| Ground Two | "Whether Mr. Gafford was denied effective assistance of counsel by failing to sufficiently argue specific events, which were the basis for suppressing Mr. Gafford's taped statement, in violation of his rights guaranteed under the 6th and 14th amendments to the United States Constitution." (Doc. 1, p. 4 and continuation pages 13-14) |
|---|---|

Petitioner faults trial counsel for failing to "sufficiently argue" the following points as grounds for suppressing petitioner's videotaped statements to law enforcement: (1) the law enforcement officer used deception to persuade petitioner to talk to him without counsel present, by leading petitioner to believe he was merely a witness and not a suspect; (2) "Although Mr. Gafford was read his rights after twice asking if he needed a lawyer, the spirit of the law was violated", because the officer "rapidly and barely audibly read Mr. Gafford his rights" and petitioner, when asked if he wished to speak after the rights were read, stated 'I'm tired. I want to go home.'"; (3) "Mr. Gafford was extremely intoxicated, as demonstrated by his mannerisms and repeated trips to the restroom"; (4) "[t]he officer recited Mr. Gafford his *Miranda* rights in rapid-fire, barely audible monotone and read the *Miranda* form in about ¼ amount of time it would take a college graduate to read and understand the same document"; and (5) "It is well established that a statement provided while a suspect is under the influence is grounds for suppression." (Doc. 1, p. 4 and continuation pages 13-14). Petitioner asserts that he exhausted this claim by presenting it in his Rule 3.850 motion.

Respondent asserts that petitioner properly exhausted only alleged omission (1) above, and that he procedurally defaulted the remaining complaints about counsel's performance (omissions (2)-(5)) by abandoning them in his postconviction appeal. (*See* Doc. 21, pp. 21-22). Petitioner asserts that this Court should review only

omission (1), applying a *de novo* standard of review, because the Rule 3.850 court "inadvertently evaded the merits" in its order denying relief. (Doc. 21, p. 21).

A.     Exhaustion and Procedural Default

Petitioner's Rule 3.850 motion raised all five of his present complaints about counsel's motion to suppress. The Rule 3.850 court summarily denied relief without an evidentiary hearing, as follows:

> The Defendant next argues that he was denied effective assistance of counsel when his attorney failed to have his statement to police suppressed. After the attack on Mr. Zetterlund and the killing of Mr. Ciastko, the police interviewed the Defendant regarding his potential involvement. The Defendant, after waiving his <u>Miranda</u> rights, denied cutting either man.

> The admissibility of the Defendant's custodial interview was addressed by the trial court in an order dated February 3, 2006. The statements were found to have been freely and voluntarily made after a knowing waiver of <u>Miranda</u>. Since this ground was specifically raised at trial and preserved for review, it could have or should have been on [sic] raised on appeal. Trial counsel, accordingly, cannot be held ineffective since he raised and preserved the issue at trial.

(Ex. W, pp. 154-55) (footnotes omitted).

Petitioner appealed the denial of relief to the First DCA and chose to file an appellate brief. (Ex. X). Issue II of petitioner's brief argued that counsel was ineffective for "failing to sufficiently argue specific events which were the basis for suppressing appellant's taped statement." Petitioner identified only one "specific event" that counsel should have proffered: "the officer used trickery to persuade Appellant to talk to him without counsel being present." (*Id.*, p. 14). Petitioner alleged the following factual basis for this claim:

> Before Appellant was interrogated, he asked to [sic] officer if he needed

a lawyer after the officer asked if he could read him his rights. The officer responded by saying "Well, I don't know. I know what you're saying. I wanna find out what you know. I gotta talk to you, I gotta talk to your son, I gotta talk to everybody. . . .

When the officer stated 'I know what you're saying', in response to Appellant's question as to whether he needed a lawyer, at that point, questioning should have ceased. The officer knew that Appellant was requesting information that was material to his decision as to whether or not he needed counsel present during questioning.

(*Id*., pp. 14-15). Petitioner argued that under the case of *Almeida v. State*, 748 So. 2d 922 (Fla. 1999), the officer was required to answer his question as to whether he "needed a lawyer" before any questioning took place. (*Id*., p. 15). Petitioner concluded his argument by asserting: "Based on <u>Almeida</u> the trial court abused it's discretion in denying this claim." (*Id*., p. 16). Petitioner did not argue error with regard to the lower court's denial of relief on the remaining aspects of his claim – counsel's failure to raise the issues of the officer's rapid recitation of the *Miranda* warnings, petitioner's statement that he was tired and wanted to go home when asked if he wished to speak to the officers, petitioner's intoxication, and petitioner's exhaustion during the late night questioning. (*Id*., pp. 14-16). The State did not file an answer brief. (Ex. Y). The First DCA per curiam affirmed without written opinion.

As discussed previously, to properly exhaust a claim "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U. S. at 845. In Florida, an appellant who files a brief when appealing a summarily denied postconviction motion is required to address all arguments in his brief that he wishes to preserve for appellate review. *See Watson v. State*, 975 So. 2d

572, 573 (Fla. 1st DCA 2008); *see also Cook v. State*, 638 So. 2d 134, 135 (Fla. 1st DCA 1994). If an appellant does <u>not</u> file a brief when appealing, the appellate court is required to investigate all possible means of relief. *Id.* n.1; *see also* Fla. R. App. P. 9.141(b)(2). Here, petitioner filed an appellate brief, so he was required to raise and fully address the merits of any issues he wished to preserve for appellate review.[5] Petitioner's appellate brief did not address the circuit court's rejection of his complaints that trial counsel failed to argue for suppression based on petitioner's intoxication, petitioner's exhaustion, the officer's "rapid" reading of the *Miranda* warnings, and the officer's interrogation of petitioner after petitioner stated he was tired and wanted to go home. By seeking appellate review of only one of counsel's alleged omissions (the officer's "deceptive" answer to petitioner's questions whether he needed counsel) and not the remaining ones, petitioner failed to invoke the state court's established appellate review process as to those remaining issues and thus failed to properly exhaust them in state court. *See, e.g., Solis v. Tucker*, No. 4:10cv3/SPM/CAS, 2012 WL 4478301, at *5 (N.D. Fla. Aug. 29, 2012), *Report and Recommendation Adopted by* 2012 WL 4478782 (N.D. Fla. Sept. 28, 2012).

---

[5]There are two unpublished Eleventh Circuit opinions concluding that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to <u>all</u> claims raised in his Rule 3.850 motion even if he files a brief and fails to address each issue in his appellate brief, *see Darity v. Sec'y, Dep't of Corr.*, 244 F. App'x 982, 984 (11th Cir. 2007), *and Cortes v. Gladish*, 216 F. App'x 897, 899-900 (11th Cir. 2007). The Florida case upon which these opinions rely is *Webb v. State*, 757 So. 2d 608 (Fla. 5th DCA 2000). *Webb* is no longer the decisional law of the Fifth DCA. *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (en banc). Petitioner's initial brief in his postconviction appeal was filed December 30, 2010, well after the First DCA decided *Watson v. State, supra,* and after the law of the Fifth DCA changed. *See Watson*, 975 So. 2d at 573. *Cf. Daniels v. Sec'y, Dep't of Corr.*, No. 6:10cv200-ACC-KRS, 2010 WL 5297167, at *7 (M.D. Fla. Dec. 20, 2010) (recognizing that *Webb* was receded from in *Ward*, but holding that *Webb* applied to federal petitioner's claim, because his state postconviction appeal pre-dated *Ward*).

Any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, because a second appeal is unavailable, and any further attempt to raise the four issues in another Rule 3.850 motion would be subject to dismissal as successive. *See* Fla. R. Crim. P. 3.850(f). Thus, petitioner's claim concerning counsel's failure to argue "specific events" (2)-(5) is procedurally defaulted. Petitioner has made none of the requisite showing to excuse his procedural default. Petitioner's procedural default bars federal habeas review of counsel's alleged failure to argue petitioner's intoxication, petitioner's exhaustion, the officer's "rapidly' reading the *Miranda* warnings and the officer's interrogating petitioner after petitioner said he was tired and wanted to go home. This Court's review of the state court's decision will be confined to petitioner's allegation that trial counsel was ineffective for failing to argue that petitioner's statement was obtained in violation of his constitutional rights, because the officer did not respond appropriately to petitioner's question whether he needed an attorney, and the officer used deception to persuade petitioner to talk to him without counsel present by leading petitioner to believe that he was merely a witness.

B.      Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is set forth above.

C.      Federal Review of State Court Decision

Petitioner alleges in support of this claim that counsel's suppression argument should have included the following:

> Before Mr. Gafford was interrogated, he asked the officer if he needed a lawyer after the officer asked if he could read him his rights. The officer responded by saying "Well, I don't know. I know what you're saying. I wanna find out what you know. I gotta talk to you, I gotta talk

to your son, I gotta talk to everybody. . . .

The officer knew that Mr. Gafford was requesting information that was material to his decision as to whether or not he needed counsel present during questioning. The type of utterance at issue here, was an *unequivocal* question that was prefatory to – and possibly determinative of – the invoking of a right and which cast doubt on the knowing and intelligent nature of the prior waiver. However, no waiver had been given when the question of the police had been asked. Under these circumstances, police were required to answer Mr. Gafford's question as to whether he "needed a lawyer" before any questioning took place.

(Doc. 1, p. 4 and continuation pages 13-14).

The Rule 3.850 court adjudicated petitioner's ineffective assistance claim on the merits, *see* 28 U.S.C. § 2254(d), concluding that petitioner's claim failed because the record demonstrated trial counsel adequately argued and preserved for appellate review the points petitioner faulted him for omitting. The Rule 3.850 court's explicit denial of petitioner's ineffective assistance claim on the merits is not erased or diminished by the court's observation that any substantive challenge to the admission of petitioner's statements should have been raised on direct appeal. The state court's adjudication of petitioner's claim is therefore subject to § 2254(d)'s deferential standard of review.

The state court denied relief after identifying *Strickland* as the controlling legal standard. (Ex. W, pp. 153, 154-55). The Rule 3.850 court found that trial counsel raised and properly preserved for appeal petitioner's proposed basis for suppression. The state court's finding is amply supported by the record. The transcript of the suppression hearing reveals that trial counsel raised the specific argument petitioner now claims he omitted. (Ex. B, pp. 398-400; Ex. E, pp. 749-50, 827-31). The trial court addressed that specific argument (the officer's reply of "I don't know" and "I

have to interview everybody") in its order denying the motion to suppress. (Ex. C, pp. 435-37). The trial court ruled that petitioner's question whether he needed an attorney was not an invocation of his right to counsel, that the officer responded appropriately, and that petitioner was not coerced or tricked into speaking with the officers. (*Id*., p. 436). Petitioner's appellate counsel raised the issue on direcrt appeal, arguing that the trial court erred in denying the motion to suppress where petitioner twice asked if he needed an attorney before being read his *Miranda* rights and petitioner's questions were not answered in a truthful and straightfoward manner. (Ex. Q, pp. 30, 41-46). Appellate cousnel also argued additional points favoring suppression (petitioner's intoxication, exhaustion, education level, etc. ). The State filed an answer brief, arguing that the trial court properly denied the motion to suppress. (Ex. R, pp. 13-14, 23-32). The State conceded that trial counsel argued, and preserved for appellate reivew, the following specific bases for suppression: that petitioner twice asked if he needed an attorney and the officer did not respond appropriately; that petitioner's rights were read "really fast"; and that after reading the rights form petitioner said he wanted to go home and was tired. (Ex. R, p. 25). The appellate court affirmed without written opinion.

Petitioner has not rebutted the Rule 3.850 court's findings with clear and convincing evidence that trial counsel did <u>not</u> argue and properly preserve for appeal the issue petitioner now raises. Based on the state court's finding that trial counsel did what petitioner says he should have done, the state court did not unreasonably apply *Strickland* in concluding that "trial cousnel . . . cannot be held ineffective since he raised and preserved the issue at trial." (Ex. W, p. 155). The state court's rejection of petitioner's ineffective assistance claim (petitioner's specific allegation that trial counsel failed to argue as a basis for suppression the officer's alleged inappropriate

and deceptive response to petitoiner's question whether he needed an attorney) was not contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.

Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three      <u>"The evidence was legally insufficient to support Gafford's [conviction] for attempted premeditated murder in violation of his rights guaranteed under the 6th and 14th amendments to the United States Constitution."</u> (Doc. 1, p. 5 and continuation pages 14-15).

Petitioner asserts that the trial court erred in denying his motion for JOA at the close of all the evidence, because the State's evidence was wholly circumstantial and failed to exclude the reasonable hypothesis that petitioner cut Zetterlund because petitioner believed himself under immediate threat of serious bodily harm. Petitioner concedes that at trial, he failed to establish that his belief was reasonable and thus failed to prove complete self-defense. Petitioner argues: "The evidence, when viewed in the light most favorable to the State, is entirely consistent wih voluntary manslaughter[,]" but no higher offense. (Doc. 1, contination pages 14-15).

Respondent asserts that this claim is procedurally defaulted, because the argument petitioner raises was not argued at the trial court level in counsel's motion for JOA, and was procedurally barred when petitioner attempted to raise it on direct appeal. (Doc. 21, pp. 33-36). Respondent argues in the alternative that if this ground is found to have been properly exhausted, it must be rejected without reaching the merits because it raises a purely state law issue. (*Id*., pp. 36-38). As a final alternative respondent argues that petitioner's claim should be rejected because the state court's denial of relief is consistent with *Jackson v. Virginia*, 443 U.S. 307 (1979).

A.    Exhaustion and Procedural Default

Petitioner's Ground Three is procedurally defaulted in two ways. First, to the extent petitioner's present claim can be liberally construed as raising a <u>federal constitutional</u> challenge to the sufficiency of the evidence (by petitioner's reference to the sixth and fourteenth amendments), the claim is unexhausted because petitioner did not present the federal constitutional nature of his claim to the state appellate court on direct appeal. When petitioner challenged the trial court's denial of his motoin for JOA on direct appeal, petitioner presented the same substantive arguments he presents here, but he did not say, or even suggest, that his claim was a federal claim about due process. (Ex. Q, pp. 32-40). Petitioner cited exclusively to state law cases and all of his substantive arguments addressed Florida law, namely, the State's failure to meet Florida's "special" standard for assessing the sufficiency of the evidence in wholly circumstantial cases. None of the cases petitioner cited were decided on federal grounds, and petitioner did not otherwise indicate that he intended to raise a federal claim. *See Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004) ("[A] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Although Florida courts assess the sufficeincy of the evidence under the standard applied in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), the basis of petitioner's argument on direct appeal was that Florida's "special standard of review" – the circumstantial evidence standard – applied and required petitioner's acquittal of any offense greater than manslaughter, because the State failed to rebut petitioner's hypothesis that he subjectively, if

perhaps unreasonably, perceived Zetterlund was a threat to his safety.  Nothing in petitioner's direct appeal argument would have alerted the state court to the presence of a federal claim about due process or the Fourteenth Amendment.  Thus, petitioner failed to exhaust his federal claim.  *See, e.g., Duncan v. Henry*, 513 U.S. at 365-66 115 S. Ct. at 888 (holding that federal habeas petitioner failed to exhaust his claim that the state trial court's evidentiary ruling violated the Due Process Clause of the Fourteenth Amendment; petitioner's state law claim that the prejudicial effect of the evidence outweighed its probative value was only somewhat similar to, not the same as,  petitioner's federal habeas claim that the evidence was so inflammatory as to prevent a fair trial); *Zeigler v. Crosby*, 345 F. 3d 1300, 1307 (11th Cir. 2003) (holding that federal habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution); *see also, e.g.*, *Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 850 (11th Cir. 2008) (holding that petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; "Although Florida courts assess the sufficiency of the evidence under the standard applied in *Jackson*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, the basis of Pearson's argument was that there was no evidence of reasonable fear on the part of the victim, as defined by state law.  Nothing in this argument would have alerted the state court to the presence of a federal claim about due process."); *Cook v. McNeil*, 266 F. App'x 843, 845-46 (11th Cir. 2008) (holding that petitioner did not alert the state court to the alleged federal nature of his insufficient evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner

moved for a judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in *Jackson, supra*, petitioner cited exclusively to state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court."). *Troy v. Sec'y of Dep't of Corr.*, No. 8:11cv796, 2013 WL 24212, at *15 (M.D. Fla. Jan. 2, 2013) (finding that federal habeas petitioner's challenge to the sufficiency of the evidence, which relied upon the same state law arguments challenging the sufficiency of the evidence that he presented on direct appeal, provided no basis for federal habeas relief because it presented purely state law issues; further finding that to the extent the claim could be construed as asserting a federal due process challenge to the sufficiency of the evidence, the ground was unexhausted (and procedurally defaulted) because the petitioner presented no federal due process claim to the state courts).

Even if petitioner is found to have fairly presented a federal due process claim to the state court on direct appeal, his claim is still procedurally defaulted on a different basis. When petitioner challenged the trial court's denial of his motion for JOA on appeal, the State responded that the issue was not preserved, because there was no correspondence between petitioner's motion for JOA in the trial court and his argument on appeal. Petitioner's trial motion urged that the State failed to prove premeditation, and did not contend the evidence was wholly circumstantial (because defense counsel knew the surviving victim's testimony was direct evidence, and counsel reasonably did not suggest a hypothesis of innocence), whereas petitioner's direct appeal argued that the State's evidence of petitioner's intent was "entirely circumstantial" and failed to exclude the hypothesis that petitioner retaliated with

excessive force but not with premeditation or with evil intent. (Ex. R, pp. 15-18). The State alternatively addressed the merits. (*Id*., pp. 18-23). The First DCA affirmed without written opinion.

In Florida, a motion for judgment of acquittal "must fully set forth the grounds on which it is based." Fla. R. Crim. P. 3.380; *F.B. v. State*, 852 So. 2d 226, 230 n. 2 (Fla. 2003) ("[A] motion or objection must be specific to preserve a claim of insufficiency of the evidence for appellate review."). "[U]nless the error complained of is adequately brought to the attention of the trial judge, it is not preserved and cannot be considered by [the appellate] court." *Cornwell v. State*, 425 So. 2d 1189, 1190 (Fla. 1st DCA 1983); *G.W.B. v. State*, 340 So. 2d 969 (Fla. 1st DCA 1977) (declining to review as not preserved juvenile's claim that evidence was insufficient to sustain conviction of receiving stolen property because the State failed to prove the property was stolen property on the date it was received and failed to prove the ownership of the property; the only argument made in support of the juvenile's motions for judgment of acquittal was that the juvenile had not been identified)); *Elma v. State*, 819 So. 2d 198, 199 (Fla. 4th DCA 2002) (finding argument on appeal, that circumstantial evidence was insufficient for defendant to be found a principal, was not preserved because defense counsel had argued at trial that the evidence was insufficient as to identity).

Defense counsel's motion for JOA on Count 2 contended that the State "has not proved a prima facie case as to count two. They have failed to prove a prima facie case saying that Mr. Gafford formed a premeditated design to effect the death of Joel Zetterlund and did attempt to kill and murder Joel Zetterlund by cutting of stabbing him with a knife or blade." (Ex. J, p. 991). As renewed, the motion urged: "With regard to count two, attempted murder, the state has not made a prima facie case with

regard to the elements and that the facts support otherwise." (Ex. K, p. 1183). The only ground for JOA that was arguably preserved below was that the State failed to establish a prima facie case as to premeditation. The JOA motion did not contend that the State's evidence was circumstantial and failed to exclude the hypothesis that petitioner overreacted or used excessive force but did not act with premeditation or evil intent. The state appellate court's per curiam affirmance operates as an acceptance of the State's asserted procedural bar. Where a claim is rejected without opinion, and the existence of procedural bar is clear, federal courts on habeas review will not assume that the state appellate court would have reached the merits of the claim rather than rejecting it as being procedurally barred. *See Coleman*, 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-45 (11th Cir. 1995) (applying procedural bar where state court's summary denial did not explain basis for ruling).

Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Three. Even assuming for purposes of argument that petitioner's present claim raises a federal constitutional issue and was properly exhausted, petitioner is not entitled to federal habeas relief, because the state court's rejection of his claim is consistent with clearly established federal law.

B.     Clearly Established Federal Law

As an issue of federal law, petitioner's claim derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict. The Due Process Clause of the Fourteenth Amendment requires the state to prove each element of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787, 61 L. Ed. 2d 560 (1979). Under

*Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but to federal law for the determination of whether the evidence was sufficient under the Due Process Clause. *Coleman v. Johnson*, 566 U.S. —, — 132 S. Ct. 2060, 2064, 182 L. Ed. 2d 978 (2012). When reviewing a claim of insufficient evidence, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt, but "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted). The court should not re-weigh the evidence but should view the evidence in the light most favorable to the jury's verdict. *Id*. Because jurors are free to evaluate the credibility of testimony and the weight of the evidence, the court should assume that all conflicting inferences were resolved against the defendant. *Id*. at 326. The test under *Jackson* is a limited one, and it does not require that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id*.; *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987). "The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief." *Wilcox*, 813 F.2d at 1143.

In Florida, "if the State's evidence is wholly circumstantial, not only must there be sufficient evidence establishing each element of the offense, but the evidence must also exclude the defendant's reasonable hypothesis of innocence." *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002) (*citing Orme v. State*, 677 So. 2d 258 (Fla. 1996)). When the State's evidence is both direct and circumstantial, it is unnecessary to apply the special "circumstantial evidence" standard of review. *Pagan*, 830 So. 2d at 803. Even in a purely circumstantial case, the State is not required to rebut conclusively every possible variation of events that could be inferred from the evidence, but only

to introduce competent evidence that is inconsistent with the defense's version or theory of events. *State v. Law*, 559 So.2d 187, 188-89 (Fla. 1989). The federal due process standard does not require the exclusion of any reasonable hypothesis of innocence. *See United States v. Herrera*, 931 F.2d 761, 763 (11th Cir. 1991) (holding that under federal law, it is not necessary that the evidence exclude every reasonable hypotheses of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt) (citations omitted); *see also Holland v. United States*, 348 U.S. 121, 139-40, 75 S. Ct. 127, 137-38, 99 L. Ed. 150 (1954) (rejecting the view that where the Government relies on circumstantial evidence, it must "exclude every reasonable hypotheses other than that of guilt").

There are two layers of judicial deference in federal habeas proceedings. *Johnson*, 566 U.S. at —, 132 S. Ct. at 2062. First, a reviewing state court on direct appeal may only set aside the jury's verdict for insufficient evidence if no rational trier of fact could have agreed with the jury. *Id*. Second, a federal habeas court may overturn the state court decision only if it was objectively unreasonable. *Id*. The only question for the reviewing state court under *Jackson* is "whether the finding was so insupportable as to fall below the threshold of bare rationality." *Johnson* at —, 132 S. Ct. at 2065. That determination in turn is entitled to considerable deference under AEDPA. *Id*.

C. Federal Review of State Court Decision

Florida law states that attempted first-degree premeditated murder consists of three elements: (1) an act intending to cause death that went beyond just thinking or talking about it; (2) a premeditated design to kill; and (3) the commission of an act that would have resulted in the death of the victim except that someone prevented the

defendant from killing the victim or the defendant failed to do so. *Holliday v. State*, 781 So. 2d 796 (Fla. 5th DCA 2001) (c*iting Gordon v. State*, 780 So. 2d 17, 21 (Fla. 2001)); *see also* Fla. Stat. § 782.04. With regard to premeditation, the Florida Supreme Court has held:

> Premeditation is more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose to kill may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act.

*Wilson v. State*, 493 So. 2d 1019, 1021 (Fla. 1986).

The state court's rejection of petitioner's claim was not contrary to *Jackson*, and did not involve an unreasonable application of *Jackson*. The State's evidence set forth in the Court's discussion of Ground One *supra*, when viewed in the light most favorable to the prosecution, was sufficient to enable a rational juror to find the element of premeditation beyond a reasonable doubt. *See* discussion *supra* pp. 17-20). Petitioner is not entitled to federal habeas relief on Ground Three.

| Ground Four | "(A) The trial court erred in denying defendant's motion to suppress his statement given after he twice asked it [sic] he needed a lawyer and told police he wanted to go home, in violation of his rights guaranteed under the 6th and 14th amendments to the United States Constitution;

(B) The trial court erred in denying Mr. Gafford's motion to redact those portions of his videotaped statement to police in which the interrogating officers repeatedly harangue him to tell the truth in violation of his rights guaranteed under the 6th and 14th amendments to the United States Constitution." (Doc. 1, p. 5 and continuation pages 15-16) |

Petitioner challenges the trial court's denial of his motion to suppress his videotaped statement to police and the court's denial of his motion to redact certain

portions of that statement. Respondent asserts that petitioner is not entitled to relief on sub-claim (A), because the state courts' rejection of petitioner's claim is not contrary to *Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), did not unreasonably apply *Davis*, and was not based on an unreasonable determination of the facts. (Doc. 21, pp. 39-40). Respondent asserts that petitioner's sub-claim (B) is procedurally defaulted, because petitioner did not fairly present the federal constitutional nature of his claim to the state courts. (*Id*., pp. 40-41). Respondent alternatively argues that sub-claim (B) is without merit. (*Id*., pp. 41-42).

Petitioner states that he presented these claims in his Rule 3.850 motion. The Rule 3.850 court found that petitioner's substantive claim challenging the denial of his motion to suppress was procedurally barred, as it could have and should have been raised on direct appeal. (Ex. W, p. 155). The Rule 3.850 court resolved on the merits only that aspect of petitioner's claim relating to trial counsel's ineffectiveness with regard to the motion to suppress. (*Id*.). Petitioner did, however, raise his substantive challenge to the trial court's denial of his motion to suppress on direct appeal. (Ex. Q, pp. 41-46).

<u>Denial of Motion to Suppress</u>

A.      Clearly Established Federal Law

In *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the Court held that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins. If, during custodial interrogation, a suspect indicates that he wishes to remain silent, the interrogation must cease. *Miranda*, 384 U.S. at 473-74, 86 S. Ct. at 1627. "[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends

under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 103-04, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313 (1975). Similarly, if an individual "states that he wants an attorney" during a custodial interrogation, the interrogation "must cease until an attorney is present." *Miranda*, 384 U.S. at 474, 86 S. Ct. at 1628.

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda*, 384 U.S. at 475, 86 S. Ct. at 1628. The inquiry into whether a waiver was voluntary, knowing, and intelligent is twofold:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986) (*quoting Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 2572, 61 L. Ed. 2d 197 (1979)).

B.     Federal Review of State Court Decision

Petitioner argued in his motion to suppress, as he does here, that his videotaped statement required suppression because: (1) prior to questioning and the reading of his *Miranda* rights, petitioner twice invoked his right to counsel by asking the officer if he needed an attorney; (2) petitioner invoked his right to remain silent

when, in response to a question from the officer whether petitioner wanted to speak with the officer, petitioner stated he wanted to go home; and (3) petitioner's statements were the product of coercion and deception because in response to petitioner asking if he needed an attorney, the officer mislead petitioner into believing he was merely a witness when in fact petitioner was the primary suspect. (Ex. B, pp. 399-400; Ex. E, pp. 749-50, 827-31). Petitioner's entire custodial interview was videotaped. The trial court reviewed the applicable portions of the videotapes, heard and considered the testmiony and evidence presented at the suppression hearing, and denied petitioner's motion as follows:

> 1. Defendant was taken into custody late in the evening on June 1, 2005, and transported to the Niceville Police Department where he was interviewed by Detective Joseph Forgione of the Niceville Police Department and Investigator Keith Matz of the Okaloosa County Sheriff's Office. Detective Forgione told Defendant he was going to read him his *Miranda* rights, at which time, Defendant said, "If you are reading my rights, do I need an attorney?" Detective Forgione stated, "I don't know." Before the reading of his *Miranda* rights, Defendant again asked if he needed an attorney. After Detective Forgione read Defendant his *Miranda* rights, Defendant stated that if he did not want to answer a question, he did not have to. After being asked if he was willing to talk, Defendant said he wanted to go home and he was tired, but then shortly thereafter said, "ask me anything you want; if I feel like there's something I don't want to answer, I can quit." Defendant then read and signed the written waiver of his *Miranda* rights.

> 2. Defendant alleges that his statements asking if he needs an attorney and saying he wants to go home are unequivocal requests for an attorney and an invocation of his right to remain silent. The Court disagrees and finds that these statements are at best equivocal, and that Detective Forgione's response "I don't know," was a simple, straightforward, and appropriate answer. The Court further finds that Detective Forgione was not required to cease questioning or resolve any

ambiguity of Defendant's statement that he wanted to go home, especially in light of Defendant's further statement "ask me anything you want; if I feel like there's something I don't want to answer, I can quit." The totality of the circumstances show that Defendant was familiar with and understood his *Miranda* rights; that Defendant was permitted to use the restroom when he requested it; that Defendant was relaxed and speaking freely to the officers; and that Defendant was not coerced or tricked into speaking with the officers.

    3. Based upon the testimony and evidence presented to the Court, the Court finds that the Defendant's statements were freely, knowingly and voluntarily given, and not in violation of Defendant's constitutional rights, including the right to due process, right to counsel, and right to remain silent.

(Ex. C, pp. 435-37) (footnotes omitted). Petitioner's appellate counsel raised the issue on direct appeal, arguing that the trial court erred in denying the motion to suppress where petitioner twice asked if he needed an attorney before being read his *Miranda* rights and petitioner's questions were not answered in a truthful and straightforward manner. (Ex. Q, pp. 30, 41-46). Appellate counsel also argued other points favoring suppression (petitioner's intoxication, exhaustion, education level, etc. ). The State filed an answer brief, arguing that the trial court properly denied the motion to suppress. (Ex. R, pp. 13-14, 23-32). The State conceded that trial counsel argued, and preserved for appellate review, the basis for suppression that petitioner twice asked if he needed an attorney and the officer did not respond appropriately, and that after reading the rights form petitioner said he wanted to go home and was tired. (Ex. R, p. 25). The state appellate court affirmed without written opinion.

    The state court's factual findings are amply supported by the record, and are

entitled to deference. (Ex. E; State's Ex. 2 and State's Ex. 3).[6]  In addition to the state court's findings, the record also reveals, and petitioner does not dispute, that he was familiar with and understood his *Miranda* rights prior to the interview with Detective Forgione.  Investigator Stalnaker testified at the suppression hearing that she had twice explained petitioner's *Miranda* rights to him in the past, in 1996 and 2000, as part of her work on two other criminal cases.  (Ex. E, pp. 752-53).  In each of those cases petitioner told Stalnaker that he understood his rights, agreed to waive his rights to counsel and to remain silent, gave statements to Stalnaker, and was present at trial when Stalnaker testified to petitioner's statements. (*Id*., pp. 754-55, 759).  The record of the suppression hearing further reveals that at the time of the interview, Detective Forgione did not know what charges, if any, would be filed against petitioner and perceived the situation as petitioner possibly having acted in self-defense. (Ex. E, pp. 790-91).

Given the totality of the circumstances and in light of the state court's reasonable factual determinations, the state court was not unreasonable in concluding that petitioner's question "do I need an attorney" was not a request for counsel and Officer Forgione's response was not misleading, deceptive, coercive, or an inappropriate effort to either persuade petitioner to answer questions without counsel; that petitioner's statement that he was tired and wanted to go home was not an invocation of petitioner's right to remain silent; that petitioner's waiver of his constitutional rights was knowing and voluntary; and that petitioner's statements to law enforcement were freely, knowingly and voluntarily given.

---

[6]Exhibit E is the suppression hearing transcript.  State's #2 and State's #3 are the two videotapes of the actual unredacted interview, which have been converted to DVDs and submitted with respondent's response.

<u>Redaction</u>

Early in trial, defense counsel declared that he had four other objections to the videotape of petitioner's interrogation. Only counsel's second objection is relevant here. Counsel objected to the jury hearing those portions of the interrogation where law enforcement officers "keep repeating telling [petitioner] that he's not telling the truth and that's prejudice to my client. . . ." (Ex. I, p. 769). Counsel argued that the officers were essentially telling petitioner that he was lying, and that the jury should not be allowed to hear the officers' statements. The prosecutor noted that the officers' references to petitioner as "a liar" had been redacted, and argued that there was nothing prejudicial in the jury hearing the officers admonish petitioner to tell them the truth. (*Id.*, p. 770). The parties agreed that the trial judge should watch the videotape and decide. (*Id.*, pp. 771). The next morning, the trial judge noted that he had "reviewed the four specific areas" and then overruled defense counsel's objections. The prosecutor reiterated that references to petitioner as "a liar" had been redacted. The trial judge ruled:

> THE COURT: All right. Before the jury comes in we need to go over the issue the defense had about the tape recording of the statement made by Mr. Gafford and I've reviewed the four specific areas that were objected to and I found that they're – I'm going to overrule the objection, but there was one area I believe Mr. Kilpatrick [defense counsel] indicated that the state had previously agreed to that was still on the tape. What was that?
>
> MR. KILPATRICK [defense counsel]: That was the statements – yeah, statements calling defendant a liar and not telling the truth but Mr. Elmore just informed me that he did not agree to the not telling the truth. He just agreed to statements calling the defendant a liar so I don't know.
>
> THE COURT: Okay. Well, can Mr. Peaden redact the liar issue out?

MR. ELMORE [prosecutor]:  It's not in there.

MR. KILPATRICK:  It's not in there.

THE COURT:  Oh, well then –

MR. ELMORE:  Judge, all that's in there is the cops saying, come one, tell us the truth.  There's nothing wrong with that.

THE COURT:  Okay.  I agree.

(*Id.*, pp. 771-72).  When the prosecutor moved the redacted tape into evidence as State's Ex. 39, it was subject to the objections raised at the suppression hearing, and to the objections to content not redacted that morning.  (Ex. J, p. 986).  The videotape was published, but as noted in the transcript, was not sufficiently intelligible to be transcribed during trial.  (*Id.*, p. 988).

A.    Exhaustion and Procedural Default

Respondent asserts a procedural default defense, arguing that although petitioner presented a similar state law claim to the state court on direct appeal, petitioner never presented a federal due process claim to the state courts and is now procedurally barred from doing so.  (Doc. 21, p. 40).  Respondent is correct.

When defense counsel objected to the jury hearing the officer's admonitions to tell the truth, no federal law or constitutional right was mentioned.  To the contrary, defense counsel asserted that the basis for his position was "case law . . . from the 4th DCA."  (Ex. I, p. 769).  Petitioner challenged on direct appeal the trial court's refusal to further redact the videotape, raising it as Issue III.   Petitioner argued: "Interrogating officers' opinions and characterization as to the truth and veracity of a defendant's statements are inadmissible", and that the "trial court erred in admitting the taped statement, which included such opinions."  (Ex. Q, p. 89).  Petitioner

contended that the well established law in Florida is that police officers and witnesses cannot give their opinions as to the truthfulness of a defendant. Petitioner's argument relied on, and cited to, exclusively state law cases. (*Id.*, pp. 89-92). Petitioner did not assert his direct appeal claim as a matter of federal constitutional law, did not cite to any federal cases, and did not so much as mention the federal right to due process or the United States Constitution. Petitioner did not "fairly present" to the state courts his present claim that the trial court's failure to redact the videotape violated the Due Process Clause of the Fourteenth Amendment. *See, e.g., Duncan v. Henry*, 513 U.S. at 365-66 115 S. Ct. at 888.

Petitioner is barred by state procedural rules from returning to state court to present the federal constitutional nature of his claim. Accordingly, petitioner's claim concerning redaction is considered procedurally defaulted on federal habeas review. Petitioner makes none of the requisite showings to excuse his procedural default. (*See* Doc. 25). Petitioner's procedural default bars federal habeas review of the merits of his claim.

Petitioner is not entitled to federal habeas relief on either of the sub-claims raised in Ground Four.

| Ground Five | "Whether Mr. Gafford was denied effective assistance of counsel by failing to request a limiting instruction on the use of impeachment evidence in violation of his rights guaranteed under the 6th and 14th amendments to the United States Constitution." (Doc. 1, continuation pages 18-19) |

Petitioner alleges that the State "attempted to use prior inconsistent statements made by Mr. Gafford's son as substantive evidence." (Doc. 1, continuation page 19). Petitioner faults trial counsel for "failing to seek a limiting instruction for the jury, advising them of the sole purpose of impeachment evidence." (*Id.*). Petitioner argues

that had counsel requested a limiting instruction, the outcome of his trial would have been different because: "(1) the jury would not have used impeachment evidence as substantive evidence of guilt (2) Defendant would not have been denied his right to have the jury instructed on the limited purpose of the impeachment (3) Defendant would have been acquitted when considering the State's case was circumstantial at best. . . ." (*Id*.).

The parties agree that petitioner presented this claim to the state courts in his Rule 3.850 motion as Grounds V and VI. (Doc. 21, p. 42). Respondent asserts that petitioner is not entitled to habeas relief, because the state court's rejection of the claim is consistent with *Strickland*.

A.      Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is set forth above.

B.      Federal Review of State Court Decision

The state court's written order cites *Strickland* as the controlling legal standard. (Ex. W, p. 153). As petitioner challenges only the state court's application of the two-part *Strickland* test, this Court's analysis of petitioner's claim is confined to whether the state court's application of *Strickland* was objectively unreasonable. *See Williams*, 120 S. Ct. at 1521 (interpreting 28 U.S.C. § 2254(d)(1)). The Rule 3.850 court rejected petitioner's claim as follows:

> The Defendant next claims that this attorney was ineffective in failing to object when the state attempted to use prior inconsistent statements made by the Defendant's son, John E. Gafford, as substantive evidence. He also claims that his attorney should have sought a jury instruction which informed the jury that inconsistent statements were not to be considered as substantive evidence. In support of his claim, the Defendant has cited specific instances where John E. Gafford's

testimony was contradicted by the State with prior inconsistent statements.

The Defendant is correct that prior inconsistent statements not made under oath and not subject to cross-examination are to be used as impeachment, rather than substantive, evidence. The Court, however, has reviewed the comments cited by the Defendant and finds the state did not attempt to use the witness' prior inconsistent statements as substantive evidence.

The state, in its closing, pointed out the numerous inconsistencies in John E. Gafford's recollection of events on the night Mr. Zetterlund was nearly killed. It was the state's position that the Defendant attacked each man while they were outside his house. John E. Gafford, however, insisted that the two men were inside his father's home when he came at them with a knife.

The fact that the state posited that events did not happen as John E. Gafford described does not suggest an effort to use his prior inconsistent statements as substantive evidence. The prosecution's reference to the inconsistencies in John E. Gafford's testimony was a fair comment on the evidence and, therefore, any objection would have been overruled had one been made by counsel. In addition, since the court finds that the state did not use the inconsistent statements other than as impeachment evidence, the failure to seek a limiting instruction was harmless.

(Ex. W, pp. 156-57) (footnotes omitted). The First DCA affirmed without written opinion.

The state court's findings of fact are presumed correct, and are amply supported by the record. The state court reasonably determined that petitioner's proposed objection would have been overruled, because the State did not attempt to use impeachment evidence as substantive evidence. The challenged questions to Gafford's son and the references to the son's deposition testimony and statements to

law enforcement were proper impeachment, and the State did not attempt to use the prior inconsistent statements as substantive evidence. Defense witness John E. Gafford, petitioner's son, testified to the circumstances surrounding the stabbings of Zetterlund and Ciastko. The prosecutor cross-examined John E. Gafford concerning whether certain aspects of Gafford's testimony differed from what Gafford had related previously in his deposition testimony and statements to police. (Ex. K, pp. 1042-44, 1057, 1063-65, 1070-72, 1090-91, 1094-97). John E. Gafford attempted to explain his prior statements. (*Id.*). The challenged questions, when read in context, were no more than questions directly affecting John E. Gafford's credibility. The prosecutor used John E. Gafford's prior inconsistent statements to illustrate the unreliability of his trial testimony and the inconsistencies between his trial testimony and his prior statements. The prosecutor did not use the prior inconsistent statments to affirmatively prove a fact in issue. Counsel cannot be ineffective to failing to make a losing objection. *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("Even if [defense counsel] was ineffective for failing to make the objection, the state court has told us that if he did make the objection it would not have been successful. [A defendant] cannot be prejudiced by his counsel's failure to make a losing objection.").

Petitioner also faults trial counsel for failing to request a limiting instruction advising the jury that they could consider John E. Gafford's prior statements only to decide whether or not he was credible, and not to determine the facts of what occurred. As the state court reasonably determined, because John E. Gafford's prior inconsistent statements were used for no purpose other than to impeach John E. Gafford's credibility, petitioner was not prejudiced by counsel's failure to request an instruction limiting the jury's consideration of the evidence to that purpose.

The state court's rejection of petitioner's ineffective assistance claim was not

contrary to *Strickland*, did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Five.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The Clerk shall change the docket to reflect that Michael D. Crews has been substituted as the respondent in this cause.

And it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 8), challenging the judgment of conviction and sentence in *State of Florida v. Johnny Bryant Gafford* in the Circuit Court for Okaloosa County, Florida, Case No. 05-CF-1311 be DENIED, and the Clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 6th day of March, 2013.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).